

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
GREENVILLE DIVISION

| | |
|---|---|
| SHELIA ANNETTE MOORE, § | |
| Plaintiff, § | |
| § | |
| vs. § | |
| § | Civil Action No. 6:20-03951-MGL |
| KILOLO KIJAKAZI, *Acting Commissioner of* § | |
| *the Social Security Administration*, § | |
| Defendant. § | |

**ORDER ADOPTING THE REPORT AND RECOMMENDATION
AND AFFIRMING THE DECISION OF DEFENDANT**

This is a Social Security appeal in which Plaintiff Shelia Annette Moore (Moore) seeks judicial review of the final decision of Defendant Kilolo Kijakazi (Kijakazi) denying her claim for Supplemental Security Income (SSI) under Title XVI of the Social Security Act (Act). The matter is before the Court for review of the Report and Recommendation (Report) of the United States Magistrate Judge suggesting the Court affirm Kijakazi's decision. The Report was made in accordance with 28 U.S.C. § 636 and Local Civil Rule 73.02 for the District of South Carolina.

The Magistrate Judge makes only a recommendation to the Court. The recommendation has no presumptive weight. The responsibility to make a final determination remains with the Court. *Mathews v. Weber*, 423 U.S. 261, 270 (1976). The Court is charged with making a de novo determination of those portions of the Report to which a specific objection is made, and the Court may accept, reject, or modify, in whole or in part, the recommendation of the Magistrate Judge or recommit the matter with instructions. 28 U.S.C. § 636(b)(1). The Court need not conduct a de

novo review, however, "when a party makes general and conclusory objections that do not direct the court to a specific error in the [Magistrate Judge's] proposed findings and recommendations." *Orpiano v. Johnson*, 687 F.2d 44, 47 (4th Cir. 1982); *see* Fed. R. Civ. P. 72(b).

The Magistrate Judge filed the Report on October 8, 2021, Moore filed her objections on November 5, 2021, Kijakazi filed her reply on November 17, 2021, and Moore filed a reply on November 30, 2021, asking to file a supplemental brief regarding the Constitutionality of Kijakazi's decision. The Court allowed Moore to brief this issue and provided Kijakazi an opportunity to respond, to which Moore then filed a reply. The Court has reviewed the objections, including Moore's contention regarding the Constitutionality of Kijakazi's decision, but holds them to be without merit. It will therefore enter judgment accordingly.

On December 11, 2017, Moore initially filed her application for SSI. She contended her disability commenced on January 1, 2017. Kijakazi denied Moore's application for SSI initially and upon reconsideration. Moore then requested a hearing before an Administrative Law Judge (ALJ), which the ALJ subsequently conducted on February 11, 2020.

On March 27, 2020, the ALJ issued a decision in which he found Moore not disabled under the Act. The Appeals Council denied Moore's request for review of the ALJ's decision, and an appeal to this Court followed.

The Act has, by regulation, reduced the statutory definition of "disability" to a series of five sequential questions to determine if a person is disabled. 20 C.F.R. §§ 404.1520(a). The five steps are: (1) whether the claimant is currently engaging in substantial gainful activity; (2) whether the claimant has a medically determinable severe impairment(s); (3) whether such impairment(s) meets or equals an impairment as set forth in the Listings of Impairments found at 20 C.F.R. Part 404, Subpart P, Appendix I; (4) whether the impairment(s) prevents the claimant from returning

to his past relevant work; and, if so, (5) whether the claimant is able to perform other work as it exists in the national economy.  20 C.F.R. §§ 404.1520(a)(4)(i)-(v).

It is the plaintiff's duty both to produce evidence and prove she is disabled under the Act. *See Pass v. Chater*, 65 F.3d 1200, 1203 (4th Cir. 1995).  Nevertheless, the ALJ is to develop the record, and when he "fails in his duty to fully inquire into the issues necessary for adequate development of the record, and such failure is prejudicial to the claimant, the case should be remanded."  *Marsh v. Harris*, 632 F.2d 296, 300 (4th Cir. 1980).

It is also the task of the ALJ, not this Court, to make findings of fact and resolve conflicts in the evidence.  *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990).  "It is not within the province of [a] court to determine the weight of the evidence; nor is it [the court's] function to substitute [its] judgment for that of [the defendant] if [the] decision is supported by substantial evidence."  *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966).  In other words, a court "must sustain the ALJ's decision, even if [it] disagree[s] with it, provided the determination is supported by substantial evidence."  *Smith v. Chater*, 99 F.3d 635, 638 (4th Cir. 1996).  Under the substantial evidence standard, a court must view the entire record as a whole.  *See Steurer v. Bowen*, 815 F.2d 1249, 1250 (8th Cir. 1987) (citing Section 405(g)) ("In reviewing a denial of Social Security benefits, [a] court must determine whether substantial evidence on the record as a whole supports the Secretary's decision.").

"[T]he substantial evidence standard presupposes a zone of choice within which the decisionmakers can go either way, without interference by the courts.  An administrative decision is not subject to reversal merely because substantial evidence would have supported an opposite decision."  *Clarke v. Bowen*, 843 F.2d 271, 272–73 (8th Cir. 1988) (citations omitted) (internal quotation marks omitted) (alteration omitted).  Put differently, if the ALJ's "dispositive factual

3

findings are supported by substantial evidence, they must be affirmed, even in cases where contrary findings of an ALJ might also be so supported." *Kellough v. Heckler*, 785 F.2d 1147, 1149 (4th Cir. 1986).

Moore's objections are primarily general and conclusory and present essentially the same arguments she raised in her briefing before the Magistrate Judge. *See generally* Kijakazi Reply at 4 (noting the Magistrate Judge "fully addressed the [issues raised by Moore in her objections] in the R&R" and "[b]ecause these issues have already been fully presented in this case, the Commissioner relies on the reasoning set forth in the Magistrate Judge's R&R, as well as the arguments set forth in the Commissioner's opening brief, in responding to [Moore's] [o]bjections.").

The Court, out of an abundance of caution, however, construes three objections that it will address in turn. As to the first, Moore objects to the Magistrate Judge's conclusion the ALJ properly explained her mental Residual Functional Capacity (RFC) findings. Specifically, Moore avers the ALJ failed to explain how the mental RFC finding accounted for her limitations in concentration, persistence, and pace.

The Fourth Circuit "has not impose[d] a categorical rule that requires an ALJ to always include moderate limitations in concentration, persistence, or pace as a specific limitation in the RFC." *Shinaberry v. Saul*, 952 F.3d 113, 121 (4th Cir. 2020). "On the contrary, . . . an ALJ can explain why [a claimant's] moderate limitation in concentration, persistence, or pace at step three does not translate into a limitation in the claimant's RFC." *Id.* (internal citation omitted). "For example, the ALJ may find that the concentration, persistence, or pace limitation does not affect [the claimant's] ability to work, in which case it would [be] appropriate to exclude it from the hypothetical tendered to the vocational expert." *Id.* (internal citation omitted).

4

Here, as noted by the Magistrate Judge, the Fourth Circuit "does not require a limitation in the RFC just because there is a moderate limitation in concentration, persistence, and pace; thus, important to the analysis is whether the ALJ's decision explained the mental RFC findings." Report at 8. The Magistrate Judge, in his Report, correctly concluded the ALJ's decision undertook such an analysis and specifically noted "the ALJ's decision contained a detailed discussion of [Moore's] mental impairments and their corresponding effect on [her] RFC." *Id*.

In fact, Moore has failed to provide "reference to record evidence that was not addressed in the ALJ's decision" and "instead argu[es] that the ALJ misinterpreted the evidence, which requests that this [C]ourt go beyond the purview of substantial evidence review and re-weigh the record evidence." *Id.* at 9. The Court is unable to do so here. *See, e.g., Celebrezze*, 368 F.2d at 642 ("It is not within the province of [a] court to determine the weight of the evidence; nor is it [the court's] function to substitute [its] judgment for that of [the defendant] if [the] decision is supported by substantial evidence."). At bottom, the Court agrees with the Magistrate Judge's well-reasoned analysis and conclusion the ALJ properly explained Moore's mental RFC findings, and this objection will be overruled.

Next, Moore objects to the Magistrate Judge's conclusion the ALJ properly evaluated the opinion evidence of two doctors: consultive examiner Ron O. Thompson, Ph.D. (Thompson) and treating psychologist Eman Sharawy, M.D. (Sharawy).

The ALJ must consider and evaluate the persuasiveness of the opinion evidence by considering the following factors: (1) supportability, (2) consistency, (3) relationship with the claimant, (4) specialization, and (5) other factors that tend to support or contradict the opinion. 20 C.F.R. §§ 404.1520c(b), (c), 416.920c(b), (c). Supportability and consistency are the most important factors to consider, and an ALJ must explain how these factors are considered in the

5

determination or decision.  20 C.F.R. §§ 404.1520c(a), (b)(2), 416.920c(a), (b)(2).  An ALJ may, but is not required to, explain how the remaining factors were considered.  *Id.* 416.920c(b)(2).

Supportability denotes "[t]he extent to which a medical source's opinion is supported by relevant objective medical evidence and the source's supporting explanation[.]" *Revisions to Rules Regarding the Evaluation of Medical Evidence*, 82 Fed. Reg. 5844-01, *5853, 2017 WL 168819 (Jan. 18, 2017).  As to the consistency factor, "[t]he more consistent a medical opinion . . . is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) . . . will be."  20 C.F.R. §§ 404.1520c(c)(2), 416.920c(c)(2).  In other words, consistency denotes "the extent to which the opinion is consistent with the evidence from other medical sources and nonmedical sources in the claim."  *Revisions to Rules*, 82 Fed. Reg. at *5853.

"[T]he ALJ must both identify evidence that supports his conclusion and 'build an accurate and logical bridge from [that] evidence to his conclusion.'" *Woods v. Berryhill*, 888 F.3d 686, 694 (4th Cir. 2018) (citing *Monroe v. Colvin*, 826 F.3d 176, 189 (4th Cir. 2016)).  "[T]here is no rigid requirement that the ALJ specifically refer to every piece of evidence in his decision[.]"  *Reid v. Comm'r of Soc. Sec.*, 769 F.3d 861, 865 (4th Cir. 2014) (quoting *Dyer v. Barnhart*, 395 F.3d 1206, 1211 (11th Cir. 2005)).

Here, the Court concludes the ALJ properly evaluated the opinion evidence of Thompson and Sharawy.  The Court need not spill significant ink restating the lengthy, detailed, well-written, and comprehensive analysis undertaken by the Magistrate Judge of the ALJ's thorough summary of the inconsistencies of Thompson and Sharay's opinions under the supportability and consistency analysis.  *See generally* Report at 9–19.  All that matters is the ALJ properly evaluated the opinion evidence of Thompson and Sharawy to arrive at the reasonable conclusion their opinions were unpersuasive.  Moore's objection requests this Court to go "beyond the purview of

6

substantial evidence review and re-weigh the record evidence[,]" *id.* at 9, which it is unable to do, *see, e.g., Celebrezze*, 368 F.2d at 642 ("It is not within the province of [a] court to determine the weight of the evidence; nor is it [the court's] function to substitute [its] judgment for that of [the defendant] if [the] decision is supported by substantial evidence."). Accordingly, this objection will be overruled, too.

Lastly, Moore argues Kijakazi's decision denying her SSI claim was Constitutionally defective because the Act's provision that limits the President's authority to remove the Presidentially-appointed, Senate-confirmed Commissioner of Social Security without good cause, 42 U.S.C. § 902(a)(3), violates the separation of powers. Moore posits the appropriate remedy for this violation of the separation of powers is for a new hearing before a properly appointed official. Kijakazi, on the other hand, disagrees and avers Moore's argument fails because she is unable to demonstrate compensable harm.

42 U.S.C. § 902(a)(3) does in fact violate the separation of powers to the extent it is construed as limiting the President's authority to remove the Commissioner of Social Security without good cause, but "[t]he conclusion that the removal restriction is [C]onstitutionally unenforceable does not affect the validity of the remainder of the [S]tatute." Off. of Legal Couns., U.S. Dep't of Just., Constitutionality of the Comm'r of Soc. Sec.'s Tenure Prot., 2021 WL 2981542 (July 8, 2021).

As the United States Supreme Court recently explained in *Collins v. Yellen*, 141 S. Ct. 1761 (2021), even where an unconstitutional statutory removal restriction exists, a plaintiff seeking relief on that basis must show that the "unconstitutional provision . . . inflict[ed] compensable harm." *Id.* at 1787–89.

Here, Moore argues because the ALJ who adjudicated her claim served under authority delegated from a Commissioner who enjoyed unconstitutional removal protection, the denial of her claim automatically violates the separation of powers, thus necessitating a new hearing. This contention is incorrect. Unlike Appointment Clause defects, where the presiding official does not enjoy proper authority to occupy the office, *Lucia v. SEC*, 138 S. Ct. 2044 (2018), agency action is not per se invalid simply because it can be traced back to an official subject to an unconstitutional removal protection.

Rather, under *Collins*, where an agency official is properly appointed, there can be no claim that he "exercise[d] . . . power that [he] did not lawfully possess." *Collins*, 141 S. Ct. at 1788; *see also id.* at 1788 n.23 ("the unlawfulness of the removal provision does not strip [an official] of the power to undertake the other responsibilities of his office[.]"). Consequently, "there is no reason to regard any of the actions taken" by officials with tenure protection during this period "as void." *Id.* at 1787; *see also id.* at 1793 (Thomas, J., concurring) (where officials were properly appointed, there is "no barrier to them exercising power[.]").

*Collins* provides, therefore, that actions taken by properly appointed officials—which include both the ALJ who presided over Moore's claim (whose appointment was ratified by Acting Commissioner Nancy Berryhill who was without tenure protections) and Commissioner Andrew Saul who occupied the office when the ALJ issued the decision (appointed by President Trump with the advice and consent of the Senate)—are not void.

Moore, in her supplemental briefing, attempts to add a second layer to the removal analysis, and argues the ALJ also enjoyed for cause protection similar to the Commissioner, which further demonstrates the unconstitutionality of the decision on her benefits claim. Although *Collins* failed to involve a dual-layer removal scheme, a recent case from the Ninth Circuit is instructive: *Decker*

*Coal Co. v. Pehringer*, 8 F.4th 1123 (9th Cir. 2021).  In that case, a coal company petitioned for review of an order of the Benefits Review Board that affirmed the decision of a Department of Labor ALJ, which awarded benefits to a former coal mine worker under the Black Lung Benefits Act.  *Id.*  The coal company in that case, like Moore, alleged an unconstitutional two-layer removal scheme.  *Id.* at 1128.  The Ninth Circuit rejected this argument and pointed to *Collins*, opining "*Collins* is controlling with respect to the remedy for any unconstitutionality in the removal provisions[,]" and a plaintiff must show compensable harm.  *Id.* at 1137.

At bottom, notwithstanding the fact the properly appointed ALJ in Moore's case had full authority to make decisions on her SSI claim, and the properly appointed Commissioner had full authority to carry out the responsibilities of his office, Moore is unable to show compensable harm.  At most, Moore's allegations of harm rely on broad and generalized contentions she was deprived of a government that "preserves the chain of accountability with the President serving as a check on those federal officials and the people as a check on the President."  Moore Suppl. Br. at 6 (footnote omitted).  Moore has failed to conceivable show how the President's supposed inability to remove the Commissioner or the ALJ without good cause might possibly have affected her disability benefits decision.

In fact, Associate Justice Kagan identified precisely this potential problem in explaining how the Court's holding in *Collins* would guide the remedial analysis in separation of powers challenges going forward: "[c]onsider the hundreds of thousands of decisions that the Social Security Administration (SSA) makes each year . . . . [G]iven the majority's remedial analysis, I doubt the mass of SSA decisions—which would not concern the President at all—would need to be undone."  *Collins*, 141 S. Ct. at 1802 (Kagan, J., concurring).  Inasmuch as Moore has failed to show any compensable harm, the Court will overrule this objection as well.

After a thorough review of the Report and the record in this case pursuant to the standard set forth above, the Court overrules Moore's objections, adopts the Report, and incorporates it herein. Therefore, it is the judgment of the Court Kijakazi's decision is **AFFIRMED**.

**IT IS SO ORDERED.**

Signed this 9th day of March 2022, in Columbia, South Carolina.

s/ Mary Geiger Lewis
MARY GEIGER LEWIS
UNITED STATES DISTRICT JUDGE
